**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                              )
VERNARD EVANS,                                )
                                              )
                    Plaintiff,                )
                                              )
        v.                                    )   Civil Action No. 08-1077 (RBW)
                                              )
                                              )
KATHLEEN SEBELIUS,                            )
Secretary of the Department of                )
Health and Human Services                     )
                                              )
                    Defendant.[1]             )
_____)

**MEMORANDUM OPINION**

Vernard Evans, the plaintiff in this civil lawsuit, brings this action against the Secretary

of the Department of Health and Human Services (the "Secretary") in her official capacity,

alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17

(2006) ("Title VII"), Amended Complaint ("Am. Compl.") ¶¶ 5, 30, and the Age Discrimination

in Employment Act of 1967, 29 U.S.C. § 623(a) (2006) (the "ADEA"),[2] Plaintiff's Opposition to

---

[1]  Pursuant to Federal Rule of Civil Procedure 25(d)(1), the Court has substituted the current Secretary of Health and Human Services, Kathleen Sebelius, as the defendant in this action.

[2]  The plaintiff did not formally assert an age discrimination claim in her Amended Complaint. However, the defendant addressed the ADEA in her motion for summary judgment, to which the plaintiff has responded in her opposition. Based on the leniency afforded to pro se plaintiffs as directed by the District of Columbia Circuit, the Court will treat the complaint as having been constructively amended so as to include a claim under the ADEA. See Richardson v. United States, 193 F.3d 545, 548-49 (D.C. Cir. 1999). The Court notes that such an amendment does not prejudice the defendant, as she has addressed whether the plaintiff was discriminated against based on her age in her motion for summary judgment. See Ali v. District of Columbia, 278 F.3d 1, 8-9 (D.C. Cir. 2002) (citing Sinclair v. Kleindienst, 711 F.2d 291, 293 (D.C. Cir. 1983)) (holding that the complaint must give the "defendant fair notice of the plaintiff's claim and the grounds upon which it rests").

Motion to Dismiss and Oppose Summary Judgment ("Pl.'s Opp'n I") at 1,[3] on the basis that the

Department, an agency of the United States government and her employer, engaged in

discriminatory employment practices against her based on her race (African-American), Am.

Compl. ¶¶ 5, 30, and age (55), Pl.'s Opp'n I at 1, when it failed to promote her to a position for

which she initially had been selected.  This matter is currently before the Court on the

defendant's Motion to Dismiss Or Alternatively, For Summary Judgment ("Def.'s Mot."), which

the plaintiff opposes, Pl.'s Opp'n.  After carefully considering the parties' pleadings, the

defendant's motion and the plaintiff's opposition, and all memoranda of law and exhibits

submitted with these filings,[4] the Court concludes that it must not only grant the defendant's

motion in part and deny it in part, but also grant the plaintiff limited leave to file an amended

complaint for the reasons that follow.

## I. BACKGROUND

Viewing the evidence in the light most favorable to the plaintiff, the facts are as follows.

At all relevant times pertaining to this lawsuit, the plaintiff was an employee of the

Administration for Developmental Disabilities (the "ADD"), a subordinate office of the

Administration for Children and Families (the "ACF"), within the Department of Health and

---

[3]  The plaintiff has filed two documents entitled "Opposition To Motion To Dismiss and Oppose Summary Judgment" simultaneously.  The Court will identify her twenty page submission as Plaintiff's Opposition ("Pl.'s Opp'n") I and her seven page submission as Plaintiff's Opposition ("Pl.'s Opp'n") II.

[4]  The Court also considered the following documents that were submitted in connection with this motion: (1) the defendant's Memorandum Of Points And Authorities In Support Of Motion to Dismiss Or Alternatively, For Summary Judgment ("Def.'s Mem."); (2) the defendant's Statement Of Material Facts As To Which There Is No Genuine Dispute ("Def.'s Stmt."); (3) the plaintiff's Opposition To Motion To Dismiss and Oppose Summary Judgment ("Pl.'s Opp'n"); the Plaintiff's Statement of Facts As To Which There Is A Genuine Dispute ("Pl.'s Stmt."); and the defendant's Reply To Plaintiff's Opposition to Defendant's Motion to Dismiss or Alternatively, Motion For Summary Judgment ("Def.'s Reply").

Human Services (the "Agency").  Def.'s Stmt. ¶ 1.[5]  The plaintiff, an African-American female,

age 55 at the time of her non-promotion, Def.'s Mem., Exhibit ("Ex.") 4 (Affidavit of Vernard

Evans) ("Evans Aff.") at 2, had been employed with the Agency for twenty-two years, and in her

most recent position, served as a GS-101-13 Program Specialist within the ADD, the entity

"responsible for administrating programs and policies serving persons with developmental

disabilities." Am. Compl. ¶ 2; Def.'s Stmt. ¶ 27.  The ADD is headed by a Commissioner, who

reports to the Assistant Secretary and Deputy Assistant Secretary of the ACF.  Def.'s Stmt. ¶ 1.

Prior to August 27, 2001, Sue Swenson served as Commissioner of the ADD, and she was

succeeded by Dr. Patricia Morrissey, the appointee of the incoming presidential administration in

2001.  Id. ¶ 3.

A. The Plaintiff's Application to the Lead Developmental Disability Specialist Position

On April 21, 2001, the plaintiff applied for a newly created position within the ADD, a

GS-14 position with the title "Lead Developmental Disability Specialist" ("LDDS"), "which was

one of the four positions that out-going Commissioner Swenson sought to establish as part of her

reorganization of [the] ADD."  Def.'s Stmt. ¶ 10.  The Agency identified this new position in its

vacancy announcement as a non-supervisory and non-bargaining unit position.  Def.'s Mem., Ex.

8 (LDDS Vacancy Announcement) at 1.  On May 16, 2001, a panel of senior staff members

interviewed the plaintiff for the position.  Def.'s Mem., Ex. 13 (Plaintiff's Letter to the Agency's

Office of Equal Employment Opportunity ("EEO") June 13, 2002) at 1.  Leola Brooks, the

plaintiff's supervisor and the selecting official for the position, recommended the plaintiff for the

---

[5]  The Court notes that the plaintiff has only opposed two of the Defendant's Statements of Material Fact as to
Which There is No Genuine Dispute.  Therefore the Court will cite to the defendant's (uncontroverted) facts when it
is necessary to supplement the plaintiff's complaint and in recounting of events.

promotion.[6]  Def.'s Stmt. ¶ 11; Def.'s Mem., Ex. 2 (Affidavit of Leola Brooks) ("Brooks Aff.")

at 6-7, 9, 12.  According to the plaintiff, in September of 2001, Ms. Brooks "told [her] she had

[been] selected for the position and that the selection certificate had been returned to personnel

for processing."  Am. Compl. ¶ 6.  However, the plaintiff was not formally notified of this

purported selection nor placed in the position.  Def.'s Mem., Ex. 4 (Evans Aff.) at 5-6.  The

plaintiff made several inquiries concerning the status of the position, Def.'s Stmt. ¶ 17, and

according to her complaint, was also notified by Personnel Specialist Jenny Mason that she had

been selected and "would be placed once the Presidential freeze lifted." Am. Compl. ¶ 7.

During the time period covered in this complaint, several hiring policies were in effect at

the Agency, the ACF, and the ADD.  Def.'s Stmt. ¶¶ 7-9, 12-14.  One was a January 20, 2001

decision by the incoming presidential administration to place "all Executive departments and

agencies" on a hiring freeze.  Def.'s Stmt. ¶ 7; Def.'s Mem. Ex. 17 (Government Hiring Controls

Memo Jan. 30, 2001) at 1.  Thereafter, in February 2001, Department of Health and Human

Services Secretary Tommy Thompson issued an agency wide memorandum asking the heads of

all divisions "to defer decisions to fill positions at the GS-13 through SES levels until [he had]

the opportunity to review staff deployment throughout the Department."  Def.'s Stmt. ¶ 8; Def.'s

Mem., Ex. 6 (Undated Memo from Thompson) at 1.  Despite the hiring freeze, the Agency was

not prohibited from advertising vacancies, but purportedly "could not make official offers until

the hiring control was lifted."  Def.'s Stmt. ¶ 9; Def.'s Mem., Ex. 15 (Affidavit of Vanessa

---

[6]  The defendant contests the plaintiff's use of the word "selected" in regard to the position taken by Ms. Brooks, arguing that the plaintiff was simply "recommended" for the position by Ms. Brooks.  Def.'s Reply at 2. And as Ms. Brooks has stated, she did not possess the authority to officially "select" the plaintiff for the LDDS position, and therefore, her actions constituted a recommendation or "tentative selection."  Def.'s Mem., Ex. 2 (Affidavit of Leola Brooks) ("Brooks Aff.") at 9.  The Court therefore concludes that it is incorrect to characterize Ms. Brooks' action as having been a selection as opposed to a recommendation.

Jenkins) ("Jenkins Aff.") at 6.  By October 2001, the Agency had relaxed the hiring freeze, but

retained controls on supervisory and managerial positions at the GS-14, 15, and Senior Executive

Service level.  Def.'s Stmt. ¶ 12; Def.'s Mem., Ex. 9 (Memo from Sontag Oct. 15, 2001) at 1.

Then, in November 2001, Dr. Wade Horn, Assistant Secretary for Children and Families, issued

a memorandum to all subordinate ACF offices, in which he discussed the relaxation of agency

wide hiring controls.  Def.'s Stmt. ¶ 13; Def.'s Mem., Ex. 10 (Memo from Horn Nov. 29, 2001)

("Horn Memo") at 1-3.  Dr. Horn's memorandum "continued the hiring controls on all

promotions to the GS-13 level and above, including career ladder promotions and accretions in

[the] ACF."  Def.'s Mem., Ex. 10 (Horn Memo) at 2.  The memorandum directed agency

officials to "obtain [Dr. Horn's] approval before any official offer is made . . .  for any personnel

actions that are currently pending . . . in this category."  Id.

     Still awaiting promotion into the LDDS position, on February 2, 2002, the plaintiff

enlisted the aid of her local union chapter representative, Isadora Wills.  Def.'s Stmt. ¶ 18; Am.

Compl. ¶ 8.  The plaintiff alleges that on February 5, 2002, she contacted the personnel office to

inquire into the status of the LDDS position and was given contradictory information, being told

on the one hand that personnel records indicated that she had already occupied the position,

while being ultimately told that "it could be years before any action is taken."  Am. Compl. ¶ 9.

On February 7, 2002, Ms. Wills submitted the plaintiff's "questions to the Union concerning" the

status of the position.  Id. ¶ 10.  When she had not received a response by February 28, the

plaintiff "began feeling stressed by her workload, and the added frustration from [the] promotion

process" and officially retired from the Agency.  Id.  However, according to the plaintiff, she

"was told by her manager and Union rep that [the] position was still available," and she

subsequently rescinded her retirement and returned to work.  Id.

On March 4, 2002, the plaintiff and Ms. Wills met with the President of the Union to discuss the inquiries that the plaintiff had submitted.  Id. ¶ 11.  The Union President purportedly informed the plaintiff that "she ha[d] been told that the position . . . ha[d] been cancelled per J. Ingrid Clemons."  Id.  Thereafter, the plaintiff again telephoned the personnel office to inquire into the status of the position.  Id.  The personnel office "denie[d] that the . . . [position] had been cancelled, saying instead that it [was] on hold and that the selection certificate [was] 'still good.'"  Id.  Then, on March 25, 2002, Dr. Horn, Assistant Secretary of the ACF, held an "All Hands Staff Meeting," id. ¶ 12, and according to the plaintiff, he announced that "there was 'no' promotion freeze on GS-13's and above," which was "totally contradictory" to what the plaintiff had been informed previously.  Id. ¶ 12; Pl.'s Opp'n I, Ex. 16 (Affidavit of Lonnie Stewart) ¶ 2.

After the plaintiff's March 4, 2002 meeting with the Union representatives, Ms. Wills contacted personnel representatives with a list of the plaintiff's questions concerning the LDDS position and the legitimacy of the agency hiring freeze and she received a response from Ms. Clemons, the ACF Labor Relations Officer, on March 28.  Am. Compl. ¶ 13, Def.'s Mem., Ex. 11 (Email from Clemons to Wills, March 28, 2002) ("Clemons Email").  The email stated that the LDDS position "had been cancelled on March 7, 2002 and that the cancellation was authorized by Leola Brooks, [the plaintiff's] supervisor."  Def.'s Mem., Ex. 11 (Clemons Email) ¶ 8.  However, according to the plaintiff, Ms. Brooks denied ever having cancelled the promotion.  Am. Compl. ¶ 13.  The Clemons email also informed Ms. Wills that the requested list of promotions and hires during the Presidential and Secretarial freeze "would be forwarded to [her] via inter-office mail."  Def.'s Mem., Ex. 11 (Clemons Email) ¶ 4.  However, when the plaintiff and Ms. Wills received the hiring and promotions list on April 11, 2002, "it did not list any promotions or hires in [the] ADD during the freeze."  Am. Compl. ¶ 14; Pl.'s Opp'n I, Ex. 4

(Affidavit of Isadora Wills) at 1.  Frustrated and "exasperated," the plaintiff "officially retired a

second time, on April 3, 2002."  Am. Compl. ¶ 14.

Upon her retirement, the plaintiff submitted two Freedom of Information Act ("FOIA")

requests to the Agency concerning the cancellation of the LDDS position.  See Def.'s Mem., Ex.

12 (FOIA Response May 14, 2002); id. (FOIA Response May 22, 2002).  On May 14, 2002, the

request yielded the names of three individuals who received promotions in the ADD that were

not included in the original list provided to Ms. Wills.  Def.'s Mem. Id., (FOIA Response May

14, 2002) at 2.  The plaintiff describes the individuals who received promotions as "Caucasian

females, younger in age than [her]."  Am. Compl. ¶ 15.  Specifically, the plaintiff learned that

Faith McCormick had been selected to fill an Executive Assistant to the Commissioner position

in the ADD.  See Def.'s Mem., Ex. 12 (FOIA Response May 14, 2002) at 2.  Additionally, the

FOIA response from May 22, 2002, stated that "you were selected for the position on 9/13/01 . . .

[and] personnel was not notified of a cancellation because a selection was made.  The name and

title of the authorizing official who requested holding the selected position was not located."

Def.'s Mem., Ex. 12 (FOIA Response May 22, 2002) at 1.

B. The Executive Assistant Position

When Dr. Morrissey assumed her position as the ADD Commissioner in August of 2001,

she immediately "wanted a[n] Executive Assistant as quickly as [she] could get one."  Pl.'s

Opp'n I, Ex. 24 (Hearing Testimony of Patricia Morrissey) ("Morrissey Testimony") at 45.  Dr.

Morrissey wanted a capable assistant with a "credible background" who was a "federal employee

with knowledge of people with disabilities," id., and because she was previously acquainted with

Faith McCormick, a GS-14 employee in the Department of Health and Human Services' Office

of Intergovernmental Affairs, id. at 33, Ms. McCormick was detailed into the ADD as the

7

Executive Assistant, id. at 45.  Ms. McCormick was approximately 54 years old in 2001 when

the detail was made.  Def.'s Mem., Ex. 7 (Hearing Testimony of Faith McCormick)

("McCormick Testimony") at 163.  When certain budgetary restrictions had lifted, Dr. Morrissey

issued a vacancy announcement for the Executive Assistant position, GS-15 level.  Def.'s Mem.,

Ex. 24 (Morrissey Testimony) at 33; id., Ex. 14 (Executive Assistant Vacancy Announcement) at

1.  The vacancy announcement remained outstanding from December 28, 2001 through January

14, 2002, and Dr. Morrissey admits that she personally informed Ms. McCormick about the

opening.  Pl.'s Opp'n I, Ex. 24 (Morrissey Testimony) at 44.  As the only applicant, Dr.

Morrissey selected Ms. McCormick for the position, effective February 24, 2002.  Id. at 45;

Def.'s Stmt. ¶ 25.  The plaintiff maintains that she was not aware of the availability of the

Executive Assistant position and was therefore denied the opportunity to apply for the position.

Pl.'s Opp'n I at 12.

On June 13, 2002, the plaintiff contacted her EEO Counselor to file a complaint of

discrimination based on race and age.  Def.'s Mem, Ex. 13 (Letter to EEO June 13, 2002) at 1.

Unsatisfied with the investigation of her charge by the Agency, the plaintiff filed a formal

complaint with the Equal Employment Opportunity Commission ("EEOC").  Am. Compl. ¶ 17.

Before the EEOC, the Agency argued that the plaintiff's initial EEO filing was untimely, based

on an email that the plaintiff labels as having been "doctored," presumably, she is contending, by

the Agency "add[ing] promotions in [the] ADD that should have been in the original e-mail, but

were not included."  Id. ¶ 22.  At that time, the plaintiff presented "the original e-mail . . . with a

sworn statement from the Union Rep who received [it] (that did not contain the ADD

promotions)."  Id.  Nonetheless, the administrative judge dismissed the case for having been

untimely filed.  Id.  The plaintiff timely appealed the dismissal and prevailed on appeal, resulting

in her case being returned to the administrative judge.  Id. ¶ 23.  After conducting a hearing, the Agency issued its final decision on April 17, 2006, concluding that there had been no discrimination.  Evans v. Leavitt, Appeal No. 0120063847, 2008 WL 858955, at *1 (E.E.O.C. Mar. 21, 2008).  On June 16, 2006, the plaintiff appealed the decision to the EEOC's Office of Federal Operations.  Id.  On March 21, 2008, the Office of Federal Operations affirmed the Agency's decision, finding that it had "provided legitimate, nondiscriminatory reasons for its actions."  Id. at *3.  The plaintiff then filed this action in this Court June 23, 2008.

In her Amended Complaint, the plaintiff charges that "the Agency discriminated against [her] based on her [r]ace in failing to promote her to the GS-14 position for which she had been selected."  Am. Compl. ¶ 30.  The plaintiff also claims that she "was not made aware" of the Executive Assistant to the Commissioner position, "or given a chance to compete for other GS-14 and GS-15 details and promotions that were made available to white women within the office, positions which the Bargaining Unit Rules indicate should happen."  Id. ¶ 5.  As a result of the Agency's actions, the plaintiff states that she has "suffered humiliation along with physical and emotion distress" and has gone from a "hard[working], trusting, productive, efficient, and conscientious employee to [a] paranoid, sleepless, [and] sad" individual who has suffered a "breakdown of [her] body with headaches, abdominal discomfort, depression, back pain, and numerous test[s] which included endoscopy procedure, [two] abdominal sonograms, upper and lower gastro intestinal evaluations, colonoscopy, and stomach CT scan, and anger and irritability with her own family."  Id. ¶ 29.  According to the plaintiff, the "[t]est results confirmed that [her] [health] problems stemmed from [her] stressed work environment and these symptoms continued past [her] retirement."  Id.

On January 12, 2009, the defendant filed the motion currently before the Court, which seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), or alternatively, for summary judgment pursuant to Federal Rule of Civil Procedure 56.  Def.'s Mot. at 1. Specifically, the defendant contends that she is entitled to the relief being requested because the plaintiff has failed to timely exhaust her administrative remedies, and her complaint should therefore be dismissed, Def.'s Mem. at 11, and that summary judgment should be awarded because (1) the evidence demonstrates that the Agency's decision to cancel the LDDS vacancy "was not based on race or age, but rather on hiring controls," id. at 12; (2) the plaintiff was not treated differently from similarly situated employees outside of her protected class, id. at 13; and (3) the plaintiff's allegations regarding the Executive Assistant position are "meritless" because she never applied for the position, id. at 16.

In opposition, the plaintiff contends:  (1) that the agency "has failed to meet its burden" of showing that her EEO contact was untimely, and nevertheless, the Court should equitably toll her claims, Pl.'s Opp'n II at 1, 6; (2) the record is "replete" with contradictions and contested issues of fact; Pl.'s Opp'n I at 1, 13-14; (3) the Collective Bargaining Agreement should have applied to the LDDS vacancy, id. at 13; and (4) she was treated differently from all other employees and the Court should compare her treatment to that of Ms. McCormick, id. at 14.

## II. STANDARD OF REVIEW

The defendant's motion seeks dismissal for failure to state a claim, or in the alternative, summary judgment.  The Court will treat such a motion as one for summary judgment when "matters outside the pleadings are presented to and not excluded by the court . . .  [and] [a]ll parties [have been] given reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d); see Yates v. District of Columbia, 324 F.3d 724, 725 (D.C. Cir.

2003); <u>Ross v. United States</u>, 591 F. Supp. 2d 48 (D.D.C. 2008) (Walton, J.).  Here, treating the

entire motion under the summary judgment standard of review is appropriate because "the

[defendant's] motion[] [was] in the alternative for summary judgment and the parties had the

opportunity to submit . . . materials in support and in opposition."  <u>Americable Int'l, Inc. v. Dep't

of Navy</u>, 129 F.3d 1271, 1274 n.5 (D.C. Cir. 1997) (finding that it would not be "unfair" to treat

such a motion as one for summary judgment).[7]

       To grant a motion for summary judgment, the Court must find that "the pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(c).  When ruling on a motion for summary judgment, the Court must view the

evidence in the light most favorable to the non-moving party.  <u>Holcomb v. Powell</u>, 433 F.3d 889,

895 (D.C. Cir. 2006), and must also draw "all justifiable inferences" in the non-moving party's

favor and accept the non-moving party's evidence as true.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477

U.S. 242, 255 (1986).  However, the non-moving party cannot rely on "mere allegations or

denials," <u>Burke v. Gould</u>, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting <u>Anderson</u>, 477 U.S. at

248) (internal quotation marks omitted) but "must set forth specific facts showing that there is a

genuine issue for trial."  Fed. R. Civ. P. 56(e); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>,

475 U.S. 574, 587 (1986).  In addition, the non-moving party cannot rely upon inadmissible

evidence to survive summary judgment; rather, the non-moving party must rely on evidence that

---

[7]  The Court notes that the defendant has complied with the District of Columbia Circuit's instruction in <u>Neal v. Kelly</u>, 963 F.2d 453, 456 (D.C. Cir. 1992), that it assist the Court in providing notice to the <u>pro se</u> plaintiff of the effect of treating its motion as one for summary judgment.  <u>See</u> Def.'s Mem. at 1-2.  Because the plaintiff's opposition demonstrates her awareness of the summary judgment standard, Pl.'s Opp'n I at 1, 10-12, the Court is satisfied that the plaintiff is not surprised by the Court's decision to review the motion under Rule 56.

would arguably be admissible at trial.  Greer v. Paulson, 505 F.3d 1306, 1315 (D.C. Cir. 2007)

(finding that "[t]o survive summary judgment the non-moving party must 'produce evidence . . .

capable of being converted into admissible evidence'" and that "sheer hearsay[] . . . 'counts for

nothing'" (internal citations omitted)).  However, the party moving for summary judgment bears

the burden of establishing the absence of evidence that supports the non-moving party's case.

Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Finally, because of the difficulty of

establishing discriminatory intent, "an added measure of rigor, or caution, is appropriate in

applying this standard to motions for summary judgment in employment discrimination cases."

Aka v. Wash. Hosp. Ctr., 116 F.3d 876, 879-80 (D.C. Cir. 1997) (internal quotation marks

omitted), rev'd on other grounds, 156 F.3d 1284 (D.C. Cir. 1998) (en banc).

### III. LEGAL ANALYSIS

A. Exhaustion of Administrative Remedies

The exhaustion of administrative remedies is a prerequisite to the awarding of judicial

relief under Title VII.  42 U.S.C. § 2000e-16(c); Brown v. Gen. Servs. Admin., 425 U.S. 820,

832-33 (1976); Bayer v. U.S. Dep't of Treasury, 956 F.2d 330, 332 (D.C. Cir. 1992).  An

aggrieved plaintiff must initiate administrative proceedings by contacting an EEO counselor

within forty-five days of the allegedly discriminatory action.  29 C.F.R. § 1614.105(a)(1); James

v. England, 332 F. Supp. 2d 239, 243-44 (D.D.C. 2004) (Walton, J.).  The exhaustion

requirement is also a prerequisite for claims of age discrimination under the ADEA, 29 U.S.C. §

633a (2006).  James, 332 F. Supp. 2d at 243 (citing Chennareddy v. Bowsher, 935 F.2d 315, 317

(D.C. Cir. 1991)).  This forty-five day time limit is not jurisdictional, but operates as a statute of

limitations defense.  See Jarrell v. U.S. Postal Serv., 753 F.2d 1088, 1091 (D.C. Cir. 1985) ("[A]

timely administrative charge is a prerequisite to initiation of a Title VII action in the District

Court . . . subject to waiver, estoppel, and equitable tolling'" (quoting <u>Zipes v. Trans World Airlines, Inc.</u>, 455 U.S. 385, 393 (1982)).  As an affirmative defense, the defendant bears the burden of proving that the plaintiff failed to properly exhaust her administrative remedies.  <u>See</u> <u>Colbert v. Potter</u>, 471 F.3d 158, 165 (D.C. Cir. 2006); <u>Armstrong v. Reno</u>, 172 F. Supp. 2d 11, 20 (D.D.C. 2001) (citing <u>Bowden v. United States</u>, 106 F.3d 433, 437-38 (D.C. Cir. 1997); <u>Brown v. Marsh</u>, 777 F.2d 8, 13 (D.C. Cir. 1985)).

In addition, under 29 C.F.R. § 1614.105(a)(2), the plaintiff may plead equitable considerations as grounds for tolling the untimely contact with an EEO counselor.  <u>See</u> <u>Stewart v. Ashcroft</u>, 352 F.3d 422, 425 (D.C. Cir. 2003) (stating that section 1614.105(a)(2) "provide[s] that the time will be tolled if [the plaintiff] 'did not know and reasonably should not have [ ] known that the discriminatory matter or personnel action occurred'" (third alteration in original)); <u>Bayer</u>, 956 F.2d at 333 (noting that the plaintiff "bears the burden of pleading and proving . . . 'equitable reasons' for noncompliance").  However, this Circuit has held that equitable tolling should only be granted in "extraordinary and carefully circumscribed circumstances."  <u>Mondy v. Sec'y of the Army</u>, 845 F.2d 1051, 1057 (D.C. Cir. 1988).

The defendant argues that the cancellation of the LDDS vacancy "is a discrete personnel action which triggered the time limits for contacting an EEO Counselor."  Def.'s Mem. at 10.  Relying on an email from ACF Labor Relations Officer Clemons to the plaintiff's union representative (Ms. Wills), the defendant contends that because the position was cancelled on March 7, 2002, "that is when time started running."  <u>Id.</u>  However, the defendant admits that the plaintiff may not have been aware of the cancellation until receiving Ms. Clemons' email on March 28, 2002.  <u>Id.</u> at 11.  Further, the defendant posits that "there is no doubt" that on April 8,

2002, the plaintiff's union representative learned that the ADD Executive Assistant position had been filled.  Id.

The plaintiff counters that under the "reasonable suspicion" standard,[8] the email she received in March was "insufficient to trigger [her] burden to contact an EEO counselor."  Pl.'s Opp'n II at 2.  The plaintiff argues that she had been given "contrary and conflicting" information regarding the LDDS position and did not suspect discrimination until receipt of the defendant's responses to her FOIA requests on May 14 and 22, 2002.  Id.  Further, the plaintiff challenges the defendant's assertion that April 8, 2002, is the operative date because the email she had received from her union representative did not contain the full list of the ADD promotions.  Id. at 4.  This is confirmed by Ms. Wills, who states that the email "did not include an Executive Assistant, GS-15, within . . . [the] ADD."  Pl.'s Opp'n I, Ex. 4 (Wills Aff.) at 1.  And, the plaintiff was not apprised of Ms. McCormick's promotion until she received the May 14, 2002 response to her FOIA requests.  Def.'s Mem., Ex. 12 (FOIA Response May 14, 2002) at 2.  Thus, according to the plaintiff, her June 13, 2002 contact with her EEO counselor was timely.  For the following reasons, the Court agrees with the plaintiff.

First, the Court rejects March 7, 2002, as the operative date because the defendant has offered no evidence that the plaintiff was notified of the LDDS position cancellation on that date.  Def.'s Mem., Ex. 11 (Clemons Email) ¶ 8.  Second, the defendant has not met its burden of proving that the plaintiff was actually notified that the LDDS position had been cancelled on

---

[8] The plaintiff relies heavily on decisions of the EEOC.  See Pl.'s Opp'n II at 2, 4.  However, these decisions are not binding authority on this Court and only have the weight of persuasive authority.  See Vinson v. Taylor, 753 F.2d 141, 148-49 n.60 (D.C. Cir. 1985) (citing Gray v. Greyhound Lines, Inc., 545 F.2d 169, 176 (D.C. Cir. 1976)).  Here, the "reasonable suspicion" standard is not only the governing law of the EEOC, but is the standard other members of this Court have employed.  See Johnson v. Gonzales, 479 F. Supp. 2d 55, 59 (D.D.C. 2007) (citing McCants v. Glickman, 180 F. Supp. 2d 35, 40-41 (D.D.C. 2001)).

March 28, 2002.  Rather, the plaintiff has offered credible evidence that she did not receive the complete list of hires in the ADD until receipt of the responses to her FOIA requests.  Pl.'s Opp'n I, Ex. 4 (Wills Aff.) at 1.  Although members of this Court have held that "'[t]he plaintiff's time for [contacting an EEO counselor] starts to run when the plaintiff has a reasonable suspicion that [she] has been the victim of discrimination,'" Hines v. Bair, 594 F. Supp. 2d 17, 22-23 (D.D.C. 2009) (citation omitted) and "is not allowed to 'wait until [she] has direct proof of the allegedly discriminatory actions,'" id. (citing McCants v. Glickman, 180 F. Supp. 2d 35 (D.D.C. 2001)), here, the plaintiff did not forestall initiating contact with an EEO counselor to strengthen her claim of discrimination, but rather, to clarify conclusively whether the Agency had in fact cancelled the LDDS position.  See Pl.'s Opp'n II at 5; Def.'s Mem., Ex. 14 (FOIA Response May 14, 2002) at 2.  Unlike the plaintiff in McCants, who had "first suspected discrimination on the day of his [job] interview" but had waited more than two years before raising his concerns "because he had no tangible evidence" of discrimination, and "hoped to get a job later," Ms. Evans promptly contacted an EEO counselor when she first suspected discrimination upon receiving the FOIA response.  See McCants, 180 F. Supp. 2d at 41; Pl.'s Opp'n II at 5.

Because the Court must consider the facts in the light most favorable to the plaintiff, and the plaintiff has offered evidence that she did not have "reasonable suspicion" of any discrimination until May 22, 2002, the Court finds that the plaintiff's June 13, 2002 contact with her EEO counselor was timely, and that the plaintiff therefore exhausted her administrative remedies before initiating this case.

B. The Plaintiff's Disparate Treatment Claims

Title VII provides that "personnel actions affecting employees . . . in executive agencies . . . shall be made free from any discrimination based on race . . . ." 42 U.S.C. § 2000e-16(a).  The ADEA provides in pertinent part that "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . in executive agencies . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633(a).  Where, as here, there is no direct evidence of discrimination,[9] the Court assesses the plaintiff's claims under the framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under the McDonnell Douglas framework, "the plaintiff must establish a prima facie case of discrimination" in the first instance, Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000), after which "the burden shifts to the defendant, who must 'articulate some legitimate, non-discriminatory reason' for the adverse action,'" Czekalski v. Peters, 475 F.3d 360, 363 (D.C. Cir. 2007) (quoting McDonnell Douglas, 411 U.S. at 802).  Assuming that the defendant can articulate a legitimate, non-discriminatory reason for its treatment of the plaintiff, "the McDonnell Douglas framework—with its presumptions and burdens—disappear[s]," Reeves, 530 U.S. at 142–43 (internal citation and quotation marks omitted), and the court must resolve only "the ultimate question of discrimination vel non." George v. Leavitt, 407 F.3d 405, 411-12 (D.C. Cir. 2005) (quoting U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 714 (1983)); see Carter v. George Washington Univ., 387 F.3d 872, 878 (D.C. Cir. 2004) (applying the McDonnell Douglas burden allocating framework to ADEA claims).

---

[9] "Direct evidence of discrimination is evidence that, if believed by the fact finder, proves the particular fact in question without any need for inference.  Such evidence includes any statement or written document showing a discriminatory motive on its face." Lemmons v. Georgetown Univ. Hosp., 431 F. Supp. 2d 76, 86 (D.D.C. 2006) (Walton, J.) (internal quotation marks, citations, and alterations omitted). The plaintiff does not argue, nor could she, that the factual record in this case contains any such direct evidence of discrimination.

To establish a prima facie case for discrimination under Title VII, the plaintiff must show that "(1) she is a member of a protected class; (2) [was subjected to] an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." Stella v. Mineta, 284 F.3d 135, 145 (D.C. Cir. 2002) (citation omitted). Similarly, to establish a prima facie case under the ADEA, the plaintiff must demonstrate "that age discrimination was a 'determining factor' in the employment decision." Cuddy v. Carmen, 694 F.2d 853, 856-57 (D.C. Cir. 1982). In that regard, the plaintiff must show that: "(1) she belongs to the statutorily protected age group, i.e., ages 40-70, (2) she suffered an adverse employment action and, (3) the unfavorable action gives rise to an inference of discrimination." Reshard v. Peters, 579 F. Supp. 2d 57, 72 (D.D.C. 2008) (Walton, J.) (citing Chappell-Johnson v. Powell, 440 F.3d 484, 488 (D.C. Cir. 2006)). One way in which a plaintiff can establish an inference of discrimination is by "demonstrating that she was treated differently from similarly situated employees who are not part of the protected class." Leavitt, 407 F.3d at 412.

However, the District of Columbia Circuit has held that when considering a motion for summary judgment "[i]n a . . . disparate-treatment suit where an employee has suffered an adverse employment action and the employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not—and should not—decide whether the plaintiff actually made out a prima facie case" and must "resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race . . . [or age]." Brady v. Office of Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008). Although Brady moderates the impact of the plaintiff's prima facie case in conducting the disparate-treatment analysis, as the District of Columbia

Circuit has since explained in <u>Jones v. Bernanke</u>, 557 F.3d 670 (D.C. Cir. 2009), the strength of the prima facie case, along with evidence of "pretext and any other" evidence of discrimination bears on the "determin[ation] whether [these several categories of evidence] 'either separately or in combination' provide sufficient evidence for a reasonable jury to infer [discrimination]." <u>Id.</u> at 679 (quoting <u>Waterhouse v. District of Columbia</u>, 298 F.3d 989, 992-93 (D.C. Cir. 2002)).

Finally, as a prerequisite to relief under Title VII and the ADEA, the plaintiff must have suffered an adverse employment action.  <u>Brady</u>, 520 F.3d at 493.  An adverse action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." <u>Broderick v. Donaldson</u>, 437 F.3d 1226, 1233 (D.C. Cir. 2006) (quoting <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 761 (1998)).

The plaintiff asserts three acts of discrimination allegedly committed by the defendant: (1) its failure to place her in the newly created LDDS position, Am. Compl. ¶ 5; (2) its decision to detail Faith McCormick, a white female, to the ADD as the Executive Assistant, allegedly without properly advertising the position, Pl.'s Opp'n I at 7 n.4; and (3) the subsequent promotion of Ms. McCormick to the Executive Assistant, GS-15 position, which allegedly deprived the plaintiff of "a chance to compete," Am. Compl. ¶ 5.

The defendant argues that the plaintiff "cannot meet [her] burden" of proving that the Agency's failure to place her into the LDDS position was based on unlawful discrimination, Def.'s Mem. at 14, and relies on a series of memoranda placing it on hiring freezes and controls as evidence of legitimate, nondiscriminatory reasons for its actions, <u>id.</u> at 12, 15.  Ultimately, the defendant claims, the plaintiff's "tentative selection was never approved" and the newly created position was cancelled without filling it with another employee.  <u>Id.</u> at 13.  The defendant further

explains that the "ADD is headed by a political appointee," and when Dr. Morrissey assumed her post, "there was no guarantee that the [she] would opt to fill positions that were created by the outgoing Commissioner." Id. at 16. In regard to the Executive Assistant position, the defendant argues that it properly advertised the position in a vacancy announcement, to which the plaintiff failed to apply. Id. at 13. The defendant also contends that the plaintiff "has cited no authority, nor can she, for her argument that the agency was under some obligation to notify her or any other employee personally of vacancy announcements." Def.'s Reply at 2. Furthermore, the defendant asserts, "the selectee for the position was Faith McCormick, a 57 year-old white female who is older than [the] [p]laintiff." Def.'s Mem. at 13.

In opposition, the plaintiff posits that "each of the various management officials and other agency officials involved in the selection decision at issue have contradicted themselves and each other on numerous occasions," and that "application of the [Collective] Bargaining Agreement would have required agency personnel to place [her] in the position within two pay periods of selecting her." Pl.'s Opp'n I at 13. She also challenges the defendant's contention that she was treated in the same manner as other similarly situated employees. Id. at 14. In regard to the Executive Assistant position, the plaintiff maintains that "when details and promotions were made available to white women within the office, [she] was not given an opportunity to compete." Id. at 1. For the following reasons, the Court must find that the plaintiff's claims cannot survive summary judgment.

Brady directs this Court to eschew assessing the plaintiff's prima facie case, the defendant having offered non-discriminatory explanations for the actions being challenged by the plaintiff. 520 F.3d at 494. Nevertheless, in evaluating whether the defendant's proffered reasons for the vacancy cancellation and failure to promote were pretextual, the Court must

consider all "relevant categories of evidence," including whether the plaintiff has made out a prima facie case of discrimination.  Jones, 557 F.3d at 678-79 (internal citation and quotation marks omitted).  The Court will therefore assess whether the plaintiff has made a prima facie case of race or age discrimination.

When a plaintiff's claim is premised on failure to promote, the prima facie case requires the plaintiff to show that:  "(1) [s]he is [a] member of a [protected class]; (2) [s]he applied and was qualified for a promotion; (3) despite [her] qualifications, [s]he was rejected; and (4) other employees of similar qualifications who were not members of the protected group were promoted at the time the plaintiff's request was denied."  Awofala v. Cent. Parking Sys. of Va., Inc., 630 F. Supp. 2d 64, 69 (D.D.C. 2009) (citing McDonnell Douglas, 411 U.S. at 802; Bundy v. Jackson, 641 F.2d 934, 951 (D.C. Cir. 1981)); see Hayslett v. Perry, 332 F. Supp. 2d 93, 99 (D.D.C. 2004) (explaining that "[t]his framework demands 'that the alleged discriminatee demonstrate at least that his rejection did not result from . . . the absence of a vacancy in the job sought'" (quoting Morgan v. Fed. Loan Home Mortg. Corp., 328 F.3d 647, 650-51 (D.C. Cir. 2003))).  Additionally, in this Circuit, "a plaintiff need not show that the position was filled by someone outside her protected class in order to make a prima facie case, though the plaintiff must show that the position was not withdrawn simply for lack of a vacancy."  Carter, 387 F.3d at 882-83 (citing Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1152-53 (D.C. Cir. 2004)); accord Carter v. Pena, 14 F. Supp. 2d 1, 6 (D.D.C. 1997).

This Circuit has held consistently that "an element of a prima facie case of discriminatory non-promotion is that the plaintiff 'applied for and was denied an available position for which he/she was qualified.'"  Lathram v. Snow, 336 F.3d 1085, 1089 (D.C. Cir. 2003) (quoting Stella, 284 F.3d at 139); Cones v. Shalala, 199 F.3d 512, 516 (D.C. Cir. 2003).  An exception to this

rule exists "when such an application would have been futile," but the plaintiff must provide evidence of the alleged futility.  Lathram, 336 F.3d at 1089.

In analyzing the plaintiff's claim regarding the LDDS position, she clearly has shown that "[s]he is [a] member of a [protected class,] . . . [s]he applied and was qualified for a promotion," and that "despite [her] qualifications, [s]he was rejected," but cannot show that "other employees of similar qualifications who were not members of the protected group were promoted at the time the plaintiff's request was denied."  Awofala, 630 F. Supp. 2d at 69.  Although the defendant does not expressly challenge the sufficiency of the plaintiff's prima facie case, [she] does emphasize that "[i]ndeed, none of the LDD Program Specialist positions were filled and as such, [the] [p]laintiff was treated no differently from other applicants."  Def.'s Mem. at 13. Likewise, the plaintiff's prima facie case of age discrimination is relatively weak.  Because she was fifty-five years old when the Agency cancelled the LDDS position, she was a member of the age group protected by the ADEA.  Def.'s Mem., Ex. 4 (Evans Aff.) at 2; see 29 U.S.C. § 633(a). Additionally, the plaintiff suffered an adverse action when she was not placed into the LDDS position.  See Broderick, 437 F.3d at 1233 (describing failure to promote as an adverse employment action).  However, she cannot satisfy the final prong of analysis, that her non-promotion "gives rise to an inference of discrimination," Reshard, 579 F. Supp. 2d at 72, because the Agency cancelled the position.  Despite the weakness of the plaintiff's prima facie case, because the defendant has offered a legitimate, nondiscriminatory reason for its actions, the Court must nonetheless evaluate the totality of the plaintiff's evidence in assessing the ultimate issue of whether she was the victim of intentional discrimination.  Brady, 520 F.3d at 494.

In her effort to rebut the defendant's asserted legitimate, nondiscriminatory reason for its actions, namely that it did not place the plaintiff into the LDDS position because of hiring

controls, the plaintiff does not dispute that the Agency was under several hiring freezes and controls during the relevant periods.  Pl.'s Stmt. ¶¶ 10, 23, 25.  Instead, she identifies contradictions in management testimony and demonstrates that throughout the EEOC's investigation, she was unable to discern precisely which management official authorized the cancellation of the LDDS position.  Pl.'s Opp'n I at 13; compare id., Ex. 10 (Deposition of Letrina Holley) ("Holley Dep.") (stating that Dr. Wells instructed her to cancel the position) at 26-27, with Def.'s Mem., Ex. 11 (Affidavit of Dr. Wells) ("Dr. Wells Aff.") (stating that Chris Gerstein "informed [him]" of the decision to cancel the position).  Although the Agency never properly informed the plaintiff of its decision when it initially cancelled the position, it also never filled the position with another employee.  Def.'s Mem., Ex. 2 (Brooks Aff.) at 12; see Carter, 14 F. Supp. 2d at 6 (finding that a plaintiff cannot establish a prima facie case of discrimination when "no one was ever hired for the vacant position, and the vacancy was ultimately canceled").  Additionally, there is no evidence that the Agency cancelled the vacancy for an impermissible reason.  See Hayslett, 332 F. Supp. 2d at 100 n.6 (assessing the motivation behind a vacancy cancellation may be warranted to determine presence of intentional discrimination); Carter, 14 F. Supp. 2d at 6 (finding that employer offered legitimate, nondiscriminatory reasons for vacancy cancellations, "namely budgetary considerations"); see also Reeves, 530 U.S. at 141 (holding that the plaintiff must show that age "'actually played a role in [the employer's decisionmaking] process and had a determinative influence on the outcome'" (quoting Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993))).  As in Carter, because the defendant has met its burden of producing a legitimate, nondiscriminatory reason for its cancellation of the vacancy, which the plaintiff has not rebutted, the plaintiff is unable to demonstrate an inference of discrimination.

Second, the plaintiff's argument that the LDDS position was improperly labeled as a non-bargaining unit also fails to raise an inference of discrimination.  The record clearly demonstrates that the Human Resources office designated the position as non-bargaining <u>before</u> the vacancy was announced.  <u>See</u> Pl.'s Opp'n I, Ex. 10 (Holley Dep.) at 9, 11.  Absent any contrary evidence, the Court cannot conclude that this designation was for a discriminatory reason.  <u>See</u> <u>Carter</u>, 14 F. Supp. 2d at 7) ("[N]either the nonmovant's conjecture and surmise nor mere 'conclusory allegations of discrimination, without more' are sufficient to defeat a motion for summary judgment." (quoting <u>Carney v. Am. Univ.</u>, 960 F. Supp. 436, 439 (D.D.C. 1997))).  The arguments the plaintiff raises concerning the Collective Bargaining Agreement are therefore inapplicable.

Third, the plaintiff disputes the Agency's assertion that Gretchen Menn, a Caucasian female, age 60, is a similarly situated employee to whom they can compare the plaintiff's treatment.  Pl.'s Opp'n I at 14-15.  The Agency argues that Ms. Menn was also selected for the LDDS position and not placed into it because of hiring controls.  Def.'s Mem. at 13.  The plaintiff challenges the Agency's position, arguing that its evidence appears to indicate only that Ms. Menn was a candidate for the position, but not that she was initially selected.  Pl.'s Opp'n I at 14-15; Def.'s Mem., Ex. 15 (ACF Promotion Selection Certificate) at 1.  However, having offered legitimate, nondiscriminatory reasons for its actions, the Agency is not required to demonstrate that another employee is similarly situated to the plaintiff, nor for that matter must the plaintiff proffer evidence of such an employee.  <u>See</u> <u>Brady</u>, 520 F.3d at 494, n.2.  Even if the plaintiff could prove that Ms. Menn was never actually selected for the position, because she cannot also show that the Agency continued to fill the vacancies, she is unable to rebut the defendant's proffered reasons for canceling the position.  <u>See</u> <u>Carter</u>, 387 F.3d at 882-83.  The

dispositive issue is that the Agency cancelled an <u>entire position</u> and never sought to revive it or to transfer its duties to another.  <u>See</u> <u>Bowie v. Ashcroft</u>, 283 F. Supp. 2d 25, 31 (D.D.C. 2003) (finding that "[w]hen a government agency cancels a vacancy announcement and no one outside the protected class is hired to fill the position, the plaintiff cannot establish her <u>prima facie</u> case").

The plaintiff spends a great amount of time exploring and disparaging the credibility of Agency management in an attempt to reveal factual inconsistencies in their testimony.  Pl.'s Opp'n I at 13-17.  These facts developed by the plaintiff may demonstrate that the defendant acted imprudently in communicating Agency policy to the plaintiff; however, as this Circuit has stated, "[e]ven if a court suspects that a job applicant 'was victimized by [ ] poor selection procedures' it may not second-guess an employer's personnel decision absent demonstrably discriminatory motive."  <u>Fishbach v. D.C. Dep't of Corrections</u>, 86 F.3d 1180 (D.C. Cir. 1996); <u>see</u> <u>Forman v. Small</u>, 271 F.3d 285, 291 (D.C. Cir. 2001) ("Consistent with the courts' reluctance to become involved in micromanagement of everyday employment decisions, the question before the court is limited to whether [the plaintiff] produced sufficient evidence of . . . discrimination, not whether [s]he was treated fairly . . . . " (internal citations omitted)).  Ultimately, the Court concludes that the Agency's actions were based on legitimate, nondiscriminatory reasons, specifically, the imposition of hiring controls and the new managerial direction that accompanied a change in leadership at the ADD.

In assessing the plaintiff's claims regarding the Executive Assistant position, the Court will first evaluate whether the plaintiff has made out a prima facie case of discriminatory non-promotion.  Here, the plaintiff only clearly establishes that she belongs to a protected class (African-American, age fifty-five) and "other employees of similar qualifications who were not

members of the protected group were promoted . . . ."  <u>Awofala</u>, 630 F. Supp. 2d at 69.  The

plaintiff has not shown that she "<u>applied</u> and was qualified for a promotion," and that "despite

[her] qualifications, [s]he was rejected."  <u>Id.</u> (emphasis added); <u>see</u> Def.'s Mem., Ex. 7 (Vernard

Evans Hearing Testimony) at 145.

 However, despite the evident weaknesses in the plaintiff's prima facie case, as explained

above, the Court must nonetheless consider the ultimate issue of discrimination <u>vel</u> <u>non</u>.  <u>Brady</u>,

520 F.3d at 494.  The plaintiff does not contest that she did not apply for the Executive Assistant,

GS-15 level position, but rather, argues that unlike Ms. McCormick, she was not personally

informed of the vacancy announcement.[10]  Am. Compl. ¶ 5; Pl.'s Opp'n I at 16.  To the extent

that the plaintiff is contending that the defendant was under a duty to inform her or any other

employee personally of the vacancy announcement, Def.'s Reply at 2, her claim is without merit.

Therefore, because the defendant properly advertised the GS-15 position in a vacancy

announcement, the plaintiff's failure to apply for it "dooms the sustainability" of her non-

promotion claim, especially considering her failure to show that failure to advise her personally

of the position was done for discriminatory reasons.  <u>Elhusseini v. Compass Group USA, Inc.</u>,

578 F. Supp. 2d 6, 19-20 (D.D.C. 2008) (Walton, J.); <u>see</u> <u>Lathram</u>, 336 F.3d at 1089.

 The plaintiff further attempts to rebut the defendant's reasons for promoting Ms.

McCormick by arguing that she is similarly situated to Ms. McCormick.  Pl.'s Opp'n I at 11.

However, the plaintiff must "demonstrate that 'all of the relevant aspects of her employment

situation were nearly identical to those . . . [of Ms. McCormick],'"  <u>Holbrook v. Reno</u>, 196 F.3d

255, 261 (D.C. Cir. 1999) (citation omitted), and the plaintiff cannot make this showing.  <u>See</u>

---

[10]  The Court addresses the plaintiff's claim regarding Ms. McCormick's temporary GS-14 detail to the Executive
Assistant position <u>infra</u> at 27-28.

Sharpe v. Bair, 580 F. Supp. 2d 123, 133 (D.D.C. 2008) (Walton, J.) (noting that even though employee identified is outside of the protected class, it "does not change the fact that as employees, they are differently situated").  Ms. McCormick, who was already a GS-14 level employee in another division of the Agency, Def.'s Reply, Ex. A (McCormick Employee Data), did not apply for the LDDS position, Def.'s Mem., Ex. 15 (Jenkins Aff.) at 8, and unlike the plaintiff, Ms. McCormick had a preexisting relationship with the Commissioner and applied for the Executive Assistant position by responding to the vacancy announcement.  Id., Ex. 7 (McCormick Hearing Testimony) at 160.  Although the Agency was under hiring restrictions at the time of Ms. McCormick's promotion, Commissioner Morrissey sought the necessary approval for the position because securing an Executive Assistant was a "condition" of her accepting the Commissioner's role.  Def.'s Mem., Ex. 7a (Morrissey Hearing Testimony) at 25. In contrast, the LDDS positions created by outgoing Commissioner Swenson never materialized under the new administration.  See id., Ex. 3 (Dr. Wells Aff.) at 6-7 (explaining that Commissioner Swenson "departed the agency prior to the position being filled" and that the new administration "ordered Personnel to hold off on completing the action because of a desire to limit the proliferation of higher graded positions").  Therefore, the treatment of the plaintiff and Ms. McCormick concerning their promotional experiences are not comparable.  See Waterhouse, 298 F.3d at 995-996) ("In the absence of evidence that the comparators were actually similarly situated to her, this allegation added nothing to [the plaintiff's] claim that the defendants' explanation for her [non-promotion] was mere pretext.").

In regard to her ADEA claim, the plaintiff claims that the Agency continued to hire employees "younger in age" while her promotion was on hold, Am. Compl. ¶ 15, and identifies Ms. McCormick as a relevant comparator.  Pl.'s Opp'n I at 11-12.  Assuming arguendo that Ms.

McCormick is in fact similarly situated to the plaintiff, her claim would still fail because Ms.

McCormick is less than one year younger in age than the plaintiff.[11]  See O'Connor v. Consol.

Coin Caterers Corp., 517 U.S. 308, 313 (1996) (holding that "such an inference [of

discrimination] cannot be drawn from the replacement of one worker with another worker

insignificantly younger" (emphasis added)); Cuddy, 694 F.2d at 856-57; Reshard, 579 F. Supp.

2d at 73-74 (dismissing age discrimination claim where plaintiff and the selectee were both fifty-

six years old); Beeck v. Fed. Express Corp., 81 F. Supp. 2d 48, 54 (D.D.C. 2000) ("To raise an

inference of discrimination by showing that a younger person was favored, a plaintiff must point

to a worker with a 'significant' or 'substantial' difference in age.") (citing O'Connor, 517 U.S. at

313).  In sum, because Ms. McCormick was less than one year younger than the plaintiff at the

time of her promotion, and in the absence of any other evidence that would permit a reasonable

jury to infer that age was at all consideration for her non-promotion, the plaintiff's ADEA claim

must fail.

        The only remaining claim is the plaintiff's contention that she "was not given notice of

the GS-14 [Executive Assistant] vacancy announcement and would have applied to the position

if so informed."  Pl.'s Opp'n I at 7 n.4.  Because the plaintiff is only raising this claim for the

first time in her opposition, she petitions the Court to "amend[] her current complaint."  Id.  The

defendant has not responded to this new allegation in her reply, nor did she anticipate it in her

motion for summary judgment.  See Def.'s Mot. at 1 (characterizing the plaintiff's claims);

Def.'s Reply 2-3.  However, as this Court has noted before, the District of Columbia Circuit's

---

[11]  In its brief, the defendant asserts that Ms. McCormick is "older" than the plaintiff.  Def.'s Mem. at 13.  However, this is actually controverted by Ms. McCormick's own testimony, in which she identified her birthday as March 7, 1947.  Def.'s Mem., Ex. 7 (McCormick Testimony) at 163.  According to the EEOC's proceedings, the plaintiff was born September 27, 1946.  Evans, Appeal No. 0120063847, 2008 WL 858955, at *1 (E.E.O.C. Mar. 21, 2008); see also Def.'s Mem., Ex. 4 (Evans Aff.) at 2 (stating age as fifty-six in 2003).

decision in Wiley v. Glassman, 511 F.3d 151 (D.C. Cir. 2007) held that "it was inappropriate for another member of this Court to 'strike' a plaintiff's claim raised for the first time in the plaintiff's opposition," if the factual basis of the "'new' claim was substantially similar" to a claim properly before the Court. Tunica-Biloxi Tribe of La. v. United States, 577 F. Supp. 2d 382, 411 (D.D.C. 2008) (Walton, J.) (quoting Wiley, 511 F.3d at 159); see Hamilton v. Paulson, 542 F. Supp. 2d 37, 61 (D.D.C. 2008) (Walton, J.). Because the plaintiff's claim regarding the GS-14 Executive Assistant detail is "substantially similar" to her claim concerning her non-selection for the GS-15 Executive Assistant position, under Wiley, the Court cannot summarily strike the claim. However, Wiley also directs the Court to consider "undue prejudice" to the defendant, who has not responded to the plaintiff's new allegations. 511 F.3d at 159. Therefore, as this Court determined in Hamilton, "[t]he only solution readily apparent . . . is to deny the defendant's motion for summary judgment without prejudice with respect to the plaintiff's apparent new claim and grant [her] leave to file an amended complaint," 542 F.3d at 62, limited to her non-selection for the GS-14 Executive Assistant detail. Thereafter, the defendant can renew her motion for summary judgment, if doing so is deemed appropriate. Id.

### III. CONCLUSION

For all of the foregoing reasons, the defendant's motion for summary judgment is hereby granted as to the plaintiff's Title VII and ADEA claims concerning the cancellation of the LDDS position and her non-selection for the GS-15 Executive Assistant position. However, as for the plaintiff's newly-raised non-selection claim regarding the GS-14 detail to the Executive Assistant position, "that claim must be decided another day." Hamilton, 542 F.3d at 63. The Court will therefore deny the defendant's motion without prejudice with respect to the new non-selection

claim made by the plaintiff in her opposition, and grant the plaintiff leave to file an amended

complaint in conformance with this Court's instructions.

       **SO ORDERED** this 17th day of December, 2009.[12]

REGGIE B. WALTON
United States District Judge

---

[12]  An order will be issued contemporaneously with this memorandum opinion (1) granting in part and denying in part the defendant's motion for summary judgment, (2) granting summary judgment in the defendant's favor with respect to the plaintiff's claims regarding the LDDS and the GS-15 Executive Assistant positions, (3) denying summary judgment with respect to the plaintiff's GS-14 Executive Assistant detail claim, and (4) directing the plaintiff to file an amended complaint with respect to the GS-14 Executive Assistant detail claim, if any she intends to file, on or before January 19, 2010.